FENIS BLANKENSHIP V. STATE.

No. 30,134. November 26, 1958.
Motion for Rehearing Overruled, January 14, 1959.

*George E. Cochran* and *A. L. Wardlaw*, Fort Worth, and *Oran Smith, Jr.*, Cleburne, for appellant.

*Leon Douglas*, State's Attorney, Austin, for the state.

WOODLEY, Judge.

The offense is arson; the punishment, two years.

The house which burned on the night of February 8, 1958, is described in the evidence as an old house consisting of an early type bus chassis used as a bedroom, around which had been built a frame room on the west, used as a living room, and another room on the east used as a kitchen, with two porches on the south, one in front and the other in back of the bus chassis. It was an old house, "pretty well run down"; "an old beat up house."

There was no water piped to the house and no bathroom.

Appellant obtained a fire insurance policy on this house on

December 29, 1957, the policy issuing in the name of "Emmer Blankenship Estate." The amount of the policy was $1,000.00, with vacancy clause which the agent explained to appellant would reduce the amount payable to two-thirds of that amount. Some eleven days later, appellant had the policy changed to himself as owner, representing that he had purchased the house from his grandmother and was fixing it up to live in.

On January 27, 1958, appellant purchased and took delivery of some household furniture and appliances in Fort Worth, paying for the lot $154.00.

On January 30, 1958, appellant secured endorsement on the policy so as to insure the household goods in the house for $1000.00.

Nine days later the house burned during the night and appellant drove to a nearby residence and reported the fire.

Seeing that he was in his shorts, the neighbor offered him a pair of pants which he declined, saying that he had a pair in his pickup.

Among the items purchased by appellant in Fort Worth on January 27 were:

"One Frigidaire refrigerator, as is _____ 5.00
One Orbin range_____ 16.00
One Bendix washer _____ 5.00
One ABC Automatic washer, as is_____ 6.00
One Leather Couch_____ 3.00
One Ironer _____ 11.50"

After the fire appellant furnished a list of the household goods that were in the house at the time of the fire which included, among other items:

"1—Automatic washer _____$125.00
1—Full size range _____ 139.50
1—7' Refrigerator _____ 90.00
1—Automatic Ironer _____ 90.00
1—Leather Office Couch_____ 140.00"

In the burned house, after the fire, was found the remains of an automatic washer which appeared to be an ABC; an

Ironer, a Simplex; a range which appeared to be an Orbin; and there was a Frigidaire "ice box" and a leather couch.

James Evans, Arson Investigator in the Fire Prevention Division of the State Board of Insurance, testified that he had a conversation with appellant on February 25, 1958; that appellant said that he purchased the furniture that was in the house from Summers Furniture Company in Fort Worth, paying in excess of $1,000.00 therefor.

After Evans had checked with Summers Furniture Company he advised appellant that he had found out he had not purchased any furniture there and appellant then admitted he had lied.

A deed from Mrs. Emmer Blankenship to appellant, dated February 11, 1958 (three days after the fire) was offered in evidence. It recites a consideration of $500.00 to be paid at the rate of $1.00 per month, and purports to convey the property upon which the house in question was located to appellant.

It was appellant's testimony that before the fire he had orally entered into agreement with his 93 year old grandmother whereby he would acquire her interest in the house in exchange for providing a proper burial for her at her death, which he did by purchase of a burial policy for which he obligated himself to pay $10 per month.

There was considerable testimony regarding a five gallon Butane tank or "Bottle" in the house, appellant's theory being that there was a leak in the pipe leading from it to the melting pot he was using as a heater, both the tank and the fire being in the bedroom.

The state's testimony, on the other hand, was that the Butane tank was on the porch, as was the portion of the pipe which the defense testimony showed had a leak; that the kitchen and living room floors were unevenly burned (spots or portions burned through and cracks burned out) indicating to state's expert witnesses that an inflammable liquid had been used on the floors. It was also testified by the state's expert witnesses that the fire could not have gotten to the living room from the Butane tank; that in their opinion the fire was set, and that it could not have been Butane that caused the floors to burn as they did.

There is much other evidence such as appellant's occupancy

of the premises and repairs and painting he testified he had made; and the testimony of the appellant's expert witness, who viewed the burned premises for the first time after the bus chassis portion had been removed, and based his opinion on the assumption that the Butane tank was in the house and not on the porch at the time of the fire.

The jury chose to accept the state's version and reject the theory that the fire was caused by the accidental ignition of Butane gas which had escaped into the bedroom.

This court must view the circumstantial evidence in the light most favorable to the jury's verdict, in passing upon its sufficiency. Isaac v. State, 158 Texas Cr. Rep. 540, 257 S.W. 2d 436; Texas Digest, Criminal Law, Key 1144(13).

We find the evidence sufficient to sustain the conviction.

The remaining point found in appellant's brief relates to the failure of the court to grant a continuance. We find nothing in the record to raise such a question.

The judgment is affirmed.